**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

POLLY BACA, and
ROBERT NEMANICH,

      Plaintiffs

v.

WAYNE W. WILLIAMS, Colorado Secretary of State, in his individual capacity.

      Defendant.

---

## COMPLAINT

---

Defendant Wayne Williams, Colorado's Secretary of State, under color of state law, threatened and intimidated Plaintiffs Polly Baca and Robert Nemanich in the exercise of their federally protected rights as presidential Electors. This complaint seeks damages for these infringments of a fundamental federal right.

## INTRODUCTION

1.     The United States Constitution secures to "Electors" the power to vote to select the President and Vice President of the United States.

2.     Colorado purports to control how an Elector exercises her franchise, by binding her, with the force of law, to vote for a particular candidate. See C.R.S. § 1-4-304.

3.     The Constitution gives Colorado no such power to restrict the legal freedom of federal Electors to vote as they deem fit. The actions of Colorado's Secretary of State to enforce that unconstitutional law thus violated Plaintiffs' federally protected rights.

1

## PARTIES

4.     Polly Baca is a resident of the City and County of Denver, Colorado and, pursuant to C.R.S.§ 1-4-302, was a Democratic Elector for the 2016 presidential election.

5.     Robert Nemanich is a resident of El Paso County, Colorado and, pursuant to C.R.S. § 1-4-302, was a Democratic Elector for the 2016 presidential election.

6.     Defendant Wayne W. Williams is a resident of Colorado Springs, Colorado, and is the Secretary of State of Colorado. Williams is sued in his individual capacity.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the case arises under the Constitution and laws of the United States.

8.     This Court has jurisdiction to award attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

9.     This Court has personal jurisdiction over Defendant Williams. Defendant Williams is a state official who resides in Colorado and works in Denver.

10.     Venue is properly laid in this District under 28 U.S.C. § 1391(b)(1), because Defendant is a state official working in Denver. The events giving rise to this action also occurred in this district, making venue also proper under 28 U.S.C. § 1391(b)(2).

## BACKGROUND

11.     Under the Constitution of the United States, the President and Vice-President are selected by "Electors," not by popular vote. Each state has two Electors plus an additional Elector for each member of the House of Representatives from that state. The District of Columbia also has three Electors.

12.     On a date set by Congress, at a place specified by state law, presidential Electors meet in each state and cast one ballot for President and one ballot for Vice President. Those votes are then sent to Congress.

13.     If any candidate receives a majority of the Electors' votes, that candidate is selected for that office. If a candidate does not receive a majority of the electoral college votes, then that election is determined in Congress — in the House for the President, in the Senate for the Vice-President.

14.     States have plenary power to select their Electors. That power includes the freedom to discriminate in the selection of Electors against an Elector who refuses to pledge support to one candidate or another. States cannot have Electors who have engaged in insurrection or rebellion or have given aid or comfort to the enemies of the United States. *See* U.S. Const. amend. XIV, § 3. Nor can an Elector be a Senator or Representative or a person holding an office of trust or profit under the United States. U.S. Const. art. II, § 1.

15.     In every state, the Electors are chosen according to the popular vote for President and Vice-President in that state. Most states appoint the Electors who have pledged to support, or were slated by the party of, the presidential candidate who received the most votes in that state. In two states, the two at-large Electors are appointed in the same way, and the other Electors are appointed according the popular vote in each congressional district in the state.

16.     Once an Elector is selected, the Constitution imposes just a single restriction on how that Elector may vote. Electors may not vote for two candidates from their own state. *See* U.S. Const. amend. XII.

17.     The Constitution does not expressly or implicitly give the states any power to restrict Electors' freedom beyond the 12th Amendment's single limitation. The power of voting resides entirely with the Electors. Because the Constitution states "the Electors" shall vote by ballot, not the states, the states cannot control how Electors vote. U.S. Const. amend. XII.

18.     Beyond the single restriction expressed in the 12th Amendment prohibiting Electors from voting for a President and Vice President from the same state as the Elector, Electors are therefore free to vote as their conscience determines.

19.     This protected freedom of presidential Electors makes sense of the framers' purpose in establishing the electoral college itself. As Alexander Hamilton described in Federalist 68, while it was "desirable that the sense of the people should operate in the choice of" the President, it was "equally desirable, that the immediate election should be made by men most capable of analyzing the qualities adapted to the station, and acting under circumstances favorable to deliberation, and to a judicious combination of all the reasons and inducements which were proper to govern their choice." If Electors could simply be directed how to vote, there would be no need for "men" who would "possess the information and discernment requisite to such complicated investigations," Federalist No. 68, as there is nothing especially "complicated" about identifying the "candidate who received the highest number of votes at the preceding general election in this state." C.R.S. § 1-4-304(5).

20.     Consistent with this freedom, 20 states impose no restriction on how Electors may vote at all. However, 30 states, including Colorado, require that presidential Electors cast their vote for the presidential candidate for the party they were selected to represent. Five states

purport to apply a penalty to an Elector who votes contrary to the popular vote. Six states purport to cancel the vote of an Elector who votes contrary to the popular vote.

21.     Though Electors throughout our history have typically exercised their franchise consistent with their party pledge or their state's popular vote, Electors for both President and Vice President have exercised their judgment to vote against their party pledge or the popular vote of their state 167 times before 2016. In 2016, a record number of Electors voted for persons for president who did not receive the majority of the popular vote in their state.

22.     These votes contrary to a party pledge or the popular vote of a state have never prevented a presidential candidate from receiving a majority of the Electors' votes. They have affected the process of choosing of Vice President. In 1836, 23 Virginia Electors abstained rather than voting for Vice President nominee Richard Johnson because he was alledged to be living with a black woman. Those defections forced the decision into the Senate, where Johnson was selected nonetheless.

23.     Before the 2016 election, no Elector who voted against her pledge or the popular vote in her state had been penalized legally, investigated criminally, or assessed a fine.

### EVENTS UNDERLYING PLAINTIFFS' INJURIES

**A.     The Election of 2016**

24.     On April 16, 2016, Plaintiffs Baca and Nemanich were nominated as Presidential Electors at the Colorado Democratic Convention in Loveland, Colorado.

25.     Plaintiff Polly Baca executed a pledge to vote for the Democratic Party's nominee for President and Vice-President.

26.     Plaintiff Nemanich executed a pledge to vote for Bernie Sanders for President.

27.    On November 8, 2016, Colorado, and every other state, held an election to select the Electors who would later vote for President and Vice-President.

28.    In that election, Hillary Clinton received close to 3 million more votes than President Donald Trump did nationally, and almost 72,000 more votes than Trump did in Colorado.

29.    Despite losing the popular vote nationally, Donald Trump was expected to receive enough votes in the Electoral College to become the 45th President of the United States.

30.    This prospect raised grave concerns among many, including Plaintiffs.

31.    No candidate for President in modern history has ever lost the popular vote by such a large margin yet been selected as President by the electoral college.

32.    No candidate for President in modern history so openly flouted the requirements of the Foreign Emoluments Clause, by refusing both to disclose his foreign holdings and to divest himself from any beneficial interest in those holdings.

33.    Neither had any election of any candidate for President in the history of the United States been so credibly alleged to have been affected by the conspiracy of a foreign nation intent on securing the election of the presumptive president.

34.    During the time period between the national election day and the date for the Electoral college voting to occur, U.S. intelligence agencies confirmed that they possessed evidence showing foreign interference in the presidential election with the purpose of favoring Donald J. Trump and undermining Hillary R. Clinton in that election.

35.    Plaintiffs and many other Presidential Electors considered this information of foreign influence in the election to be a matter of grave importance. Some Electors, including

Plaintiffs, took affirmative steps to obtain more information from the then current President, Barrack Obama, intelligence agencies, or Congress and specifically requested an intelligence briefiing. Their requests were denied. It was later learned that U.S. Intelligence agencies knew Donald J. Trump's top campaign officials and one of his sons met with Russians in June 2016 at Trump Tower in New York City after being told the Russians had "dirt" on Secretary Clinton that could help the Trump Campaign.

36.     This election, in the view of many, was thus unprecedented, and it focused attention again upon the framers' purpose in establishing an electoral college with Electors who are not beholden to popular sentiment, meet and vote separately, and have the freedom to choose a President and Vice President of their own selection.

**B.     The determination of Electors to exercise their constitutional freedom**

37.     These concerns led many to consider whether Electors should exercise their constitutional freedom to vote contrary to their pledge or the popular vote in their state.

38.     A number of Electors, referred to as the "Hamilton Electors," began to discuss the possibility of pledging to support a compromise candidate, with the express purpose of giving the House of Representatives the chance to select that candidate rather than Donald Trump.

39.     In early December, 2016, the Hamilton Electors announced that their preferred candidate was Ohio Governor John Kasich.

40.     Acting on that recommendation, Plaintiffs determined that they wanted to vote for John Kasich rather than Hillary Clinton.

**C.      Colorado's restriction of Plaintiffs' freedom**

41.      Colorado law purports to control how Electors shall exercise their vote. Section 1-4-304(5) of the Colorado Revised Statutes provides that "[e]ach presidential elector shall vote for the presidential candidate and, by separate ballot, vice-presidential candidate who received the highest number of votes at the preceding general election in this state." Section 1-13-723 of the Colorado Revised Statutes gives the state the power to punish criminally any "officer upon whom any duty is imposed by any election law who violates his duty."

42.      On November 18, 2016, Plaintiff Nemanich emailed Colorado's Secretary of State, Wayne Williams, to ask "what would happen if" a Colorado state Elector "didn't vote for . . . Clinton and . . . Kaine." Williams responded by email, stating that "if an elector failed to follow th[e] requirement" outlined in C.R.S. § 1-4-304(5), his "office would likely remove the elector and seat a replacement elector until all nine electoral votes were cast for the winning candidates."

43.      Subsequent to that email, Defendant Williams stated that if an Elector  violates C.R.S. § 1-4-304(5), they would likely face either a misdemeanor or felony perjury charge.

44.      On December 6, 2016, so as to secure their constitutional freedom to vote as their conscience determined, Plaintiffs Polly Baca and Nemanich filed suit in Colorado District Court, asking the Court to enjoin Defendant from enforcing C.R.S. § 1-4-304(5).

45.      On December 12, 2016, the district court denied Plaintiffs' injunction.

46.      The following day, Plaintiffs filed an emergency motion for injunction pending appeal in the 10th Circuit.

47.     On December 16, 2016, the 10th Circuit denied Plaintiffs' emergency motion. The Court of Appeals was not persuaded that the Colorado Secretary of State would in fact restrict the freedom of Electors. Specifically, the Court did not credit Plaintiffs' concern that Defendant Williams would actually remove Plaintiffs if they voted contrary to their pledge. As the Court noted, C.R.S. § 1-4-304(1) gave Defendant the power to remove Electors "prior to the start of voting." The Court did not believe the statute purported to give Defendant any such power "after voting has begun." Indeed, as the Court expressly noted, such an act by the Secretary of State was "unlikely in light of the text of the Twelfth Amendment."

48.     The predictions of the Court of Appeals proved mistaken.

49.     On December 19, 2016, Defendant Williams, under his emergency rule making authority, changed the oath of the Electors to put further pressure on them to vote consistent with Colorado's popular vote. The oath was changed to state that the Electors swore to vote for the person who reecieved the most votes in the general election. At a meeting with the Electors just prior to their vote, the new oath was administered over objections from Plaintiffs. In the press before the vote, Defendant Williams, both personally and through surrogates, stated that anyone who violated their oath may be subject to felony perjury charges for intentionally violating the oath. The new oath, created just moments before the Electors' vote, increased the pressure on Plaintiffs to vote for Hillary Clinton and Tim Kaine regardless of Plaintiffs' determined judgment.

50.     Presidential Elector Michael Baca, who is unrelated to Plaintiff Baca, cast his ballot for John Kasich.

51.     Despite the clear language of the 10th Circuit Court of Appeals indicating that Defendant Williams had no authority to remove an Elector once the Elector was seated and voting began—either because the statute did not so empower him or because the 12th Amendment would not permit it—Defendant Williams willfully removed Elector Michael Baca as an Elector, refused to count Mr. Baca's vote, and referred him to Colorado's Attorney General for criminal investigation and prosecution. That investigation remains open.

52.     Because of Defendant Williams' threats, his changing of the oath, and his actions and against Elector Michael Baca, Plainitiffs felt intimidated and pressured to vote against their determined judgment.

## COUNT 1
### (42 U.S.C. §1983)

53.     Plaintiffs repeat and reallege all prior paragraphs.

54.     42 U.S.C. § 1983 provides a civil cause of action to any person who is deprived of rights guaranteed by the United States Constitution or federal law, by another person, acting under color of State law.

55.     Defendant deprived Plaintiffs Polly Baca and Nemanich of a federally protected right when he threatened to remove them as Electors, and refer them for criminal prosecution, if they voted for a candidate other than Hillary Clinton.

56.     At all times, Defendant was acting under color of state law.

57.     At all times, Defendant was acting in his individual capacity.

58.     As a result of Defendant's conduct, Plaintiffs have suffered damages in an amount to be determined by the Court.

## COUNT 2
## (52 U.S.C. §10101(b) & §20510(b))

59.     Plaintiffs repeat and reallege all prior paragraphs.

60.     Title 52 U.S.C., §10101(b) provides:

No person, whether acting under color of law or otherwise, shall intimidate, threaten, coerce, or attempt to intimidate, threaten, or coerce any other person for the purpose of interfering with the right of such other person to vote or to vote as he may choose, or of causing such other person to vote for, or not to vote for, any candidate for the office of President, Vice President, presidential elector, Member of the Senate, or Member of the House of Representatives, Delegates or Commissioners from the Territories or possessions, at any general, special, or primary election held solely or in part for the purpose of selecting or electing any such candidate.

61.     Title 52 U.S.C., §20510(b) provides a private right of action to any person "aggrieved by a violation of [Chapter 52 of the US Code]."

62.     Defendant Williams "intimidate[d], threaten[ed], coerce[d], or attempt[ed] to intimidate, threaten, or coerce" Plaintiffs Polly Baca and Robert Nemanich to get them to vote contrary to their conscience and in accord with Colorado law.

63.     Defendant Williams' intimidation was at, and leading up to, the election for selecting the President and thus violated 52 U.S.C. § 10101(b).

64.     At all times, Defendant was acting under color of state law.

65.     At all times, Defendant was acting in his individual capacity.

66.     As a result of Defendant's conduct, Plaintiffs have suffered damages in an amount to be determined by the Court.

## COSTS AND ATTORNEYS' FEES

67.     Pursuant to 42 U.S.C. § 1988 and 52 U.S.C. § 20510(c), Plaintiffs further seek an award of their costs, including reasonable attorneys' fees, incurred in the litigation of this case.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request this Court enter judgment:

1. Finding Defendant Williams violated Plaintiffs' federally protected rights by threatening and intimidating Plaintiffs Baca and Nemanich.

2. Declaring C.R.S. § 1-4-304 unconstitutional;

3. Awarding Plaintiffs the costs of this action, including reasonable attorneys' fees; *and*

4. Awarding any further relief this Court deems just and appropriate.

Respectfully submitted this 10th day of August, 2017.

> By:    */s/ Lawrence Lessig*
> Lawrence Lessig
> 1563 Massachusetts Ave
> Cambridge, MA 01238
> Telephone: 617-496-8853
> Email: lessig@this.is
>
> */s/ Jason Wesoky*
> Jason Wesoky
> 1331 17th Street, Suite 800
> Denver, CO 80202
> Telephone: 303-623-9133
> Facsimile:  303-623-9129
> Email: jwesoky@hamiltondefenders.org
>
> Attorneys for Plaintiffs