**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:17-cv-1937-NYW

MICHEAL BACA, POLLY BACA and ROBERT NEMANICH,

Plaintiffs

v.

COLORADO DEPARTMENT OF STATE,

Defendant.

**PLAINTIFFS' NOTICE OF SECOND AMENDED COMPLAINT - EXHIBIT 1:
SECOND AMENDED COMPLAINT**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:17-cv-1937-NYW

MICHEAL BACA, POLLY BACA and ROBERT NEMANICH,

Plaintiffs

v.

COLORADO DEPARTMENT OF STATE,

Defendant.

## SECOND AMENDED COMPLAINT

The Colorado Department of State, acting through its Secretary, Wayne Williams, and under color of state law, specifically C.R.S. § 1-4-304, threatened and intimidated Plaintiffs Micheal Baca, Polly Baca, and Robert Nemanich in the exercise of their federally protected rights as presidential Electors. This complaint seeks nominal damages for this infringement of a fundamental federal right and a declaration that Colorado's law that purports to bind Electors by requiring them vote for the Presidential and Vice Presidential candidates that received the highest number of votes at the preceding general election, C.R.S. § 1-4-304(5), is unconstitutional.

## INTRODUCTION

1. The United States Constitution secures to "Electors" the power to vote to select the President and Vice President of the United States.

2. Colorado purports to control how an Elector exercises her franchise, by binding her, with the force of law, to vote for a particular candidate. *See* C.R.S. § 1-4-304(5) ("Binding Statute").

1

3. Colorado's Binding Statute is unconstitutional on its face and as applied to Electors because it infringes on their right to vote as they see fit without coercion.

4. Defendant, in seeking to enforce the Binding Statute, violated Plaintiffs' rights as Electors.

5. Plaintiffs seek to correct the violations of their rights as Electors under Article II and Amendment XII of the U.S. Constitution.

6. The U.S. Constitution gives Colorado no power to restrict the legal freedom of federal Electors to vote as they deem fit. The actions of the Colorado Department of State to enforce that unconstitutional law thus violated Plaintiffs' federally protected rights. Plaintiffs seek damages for the violation of their rights, and a declaration that C.R.S. § 1-4-304(5) is unconstitutional.

## PARTIES

7. Micheal Baca is a resident of the State of Nevada at the current time. At all times pertinent to this complaint, he was a resident of Denver County and the State of Colorado and, pursuant to C.R.S. § 1-4-302, was a Democratic Elector for the 2016 presidential election.

8. Polly Baca is a resident of the City and County of Denver, Colorado and, pursuant to C.R.S.§ 1-4-302, was a Democratic Elector for the 2016 presidential election.

9. Robert Nemanich is a resident of El Paso County, Colorado and, pursuant to C.R.S. § 1-4-302, was a Democratic Elector for the 2016 presidential election.

10. Defendant Colorado Department of State is a state agency.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 2201 because the case arises under the Constitution and laws of the United States.

12. This Court has personal jurisdiction over Defendant Colorado Department of State.

13. Venue is properly laid in this District under 28 U.S.C. § 1391(b), because Defendant is a state agency operating in this District, and events giving rise to this action also occurred in this District.

## BACKGROUND

14. Under the Constitution of the United States, the President and Vice-President are selected by "Electors," not by popular vote. Each state has two Electors plus an additional Elector for each member of the House of Representatives from that state. The District of Columbia also has three Electors.

15. On a date set by Congress, at a place specified by state law, presidential Electors meet in each state and cast one ballot for President and one ballot for Vice President. Those votes are then sent to Congress.

16. If any candidate receives a majority of the electoral college votes, that candidate is selected for that office. If no candidate in a race receives a majority of the electoral college votes, then that election is determined in Congress — by the House for the President, by the Senate for the Vice-President.

17. States have plenary power to select their Electors. That power includes the freedom to discriminate in the selection of Electors against an Elector who refuses to pledge support to one candidate or another. States cannot select Electors who have engaged in insurrection or rebellion or have given aid or comfort to the enemies of the United States. *See* U.S. Const. amend. XIV, § 3. Nor can an Elector be a Senator or Representative or a person holding an office of trust or profit under the United States. U.S. Const. art. II, § 1.

18. In every state, the Electors are chosen according to the popular vote for President and Vice-President in that state. Most states appoint the Electors who have pledged to support, or were slated by the party of, the presidential candidate who received the most votes in that state. In two states, the two at-large Electors are appointed in this way, and the other Electors are appointed according the popular vote in each congressional district in the state.

19. Once an Elector is selected, the Constitution imposes just a single restriction on how that Elector may vote. Under the 12th Amendment, electors may not vote for two candidates from their own state.

20. The Constitution does not expressly or implicitly give the states any power to restrict the Electors' freedom beyond the 12th Amendment's single limitation. The power of voting resides entirely with the Electors. Because the Constitution states "the Electors" shall vote by ballot, not the states, the states cannot control how Electors vote. U.S. Const. amend. XII.

21. Beyond the single restriction expressed in the 12th Amendment prohibiting Electors from voting for a President and Vice President from the same state as the Elector, Electors are free to vote as their conscience determines.

22. This protected freedom of presidential Electors makes sense of the framers' purpose in establishing the electoral college itself. As Alexander Hamilton described in Federalist 68, while it was "desirable that the sense of the people should operate in the choice of" the President, it was "equally desirable, that the immediate election should be made by men most capable of analyzing the qualities adapted to the station, and acting under circumstances favorable to deliberation, and to a judicious combination of all the reasons and inducements which were proper to govern their choice." If Electors could simply be directed how to vote, there would be no need for "men" who would "possess the information and discernment requisite

to such complicated investigations," Federalist No. 68, as there is nothing especially "complicated" about identifying the "candidate who received the highest number of votes at the preceding general election in this state." C.R.S. § 1-4-304(5).

23. Consistent with this freedom, twenty states impose no restriction on how Electors may vote at all. Thirty states, however, require that presidential Electors cast their vote for the presidential candidate of the party they were selected to represent. Five states purport to apply a penalty to an Elector who votes contrary to the popular vote. Six states purport to cancel the vote of an Elector who votes contrary to the popular vote.

24. Though Electors throughout our history have typically exercised their franchise consistent with their pledge or their state's popular vote, Electors for both President and Vice President have exercised their judgment to vote against their pledge or the popular vote of their state 167 times before 2016. In 2016, a record number of Electors voted for persons for president who did not receive the majority of the popular vote in their state.

25. These votes contrary to a pledge or the popular vote of a state have never prevented a presidential candidate from receiving a majority of the Electors' votes. They have affected the process of choosing the Vice President. In 1836, 23 Virginia Electors abstained rather than voting for vice presidential nominee Richard Johnson because he was alleged to be living with a black woman. Those defections forced the decision into the Senate, where Johnson was selected nonetheless.

26. Before this election, no Elector who voted against her pledge or the popular vote in her state has been penalized legally.

**EVENTS UNDERLYING PLAINTIFFS' INJURIES**

**A.     The Election of 2016**

27.     In April 2016, Plaintiffs Micheal Baca, Polly Baca and Robert Nemanich were nominated as Presidential Electors. Micheal Baca was nominated at the First Congressional District Assembly in Denver, Colorado, and Polly Baca and Robert Nemanich were nominated at the Colorado Democratic Convention in Loveland, Colorado.

28.     Upon becoming an Elector, Plaintiff Michael Baca executed a pledge to vote for Bernie Sanders for President.

29.     Upon becoming an Elector, Plaintiff Polly Baca executed a pledge to vote for the Democratic Party's nominee for President and Vice-President.

30.     Upon becoming an Elector, Plaintiff Robert Nemanich executed a pledge to vote for Bernie Sanders for President.

31.     On November 8, 2016, Colorado, and every other state, held an election to select the Electors who would later vote for President and Vice-President.

32.     In that election, Hillary Clinton received close to 3 million more votes than Donald Trump did nationally, and almost 72,000 more votes than Trump did in Colorado.

33.      Despite losing the popular vote nationally, Donald Trump was expected to receive enough votes in the Electoral College to become the 45th President of the United States.

34.     The election of Donald Trump raised grave concerns among many, including Plaintiffs.

35.     No candidate for President in modern history has ever lost the popular vote by such a large margin yet been selected as President by the electoral college.

36. No candidate for President in modern history so openly flouted the requirements of the Foreign Emoluments Clause, by refusing both to disclose his foreign holdings and to divest himself from any beneficial interest in those holdings.

37. Neither had any election of any candidate for President in the history of the United States been so credibly alleged to have been affected by the conspiracy of a foreign nation intent on securing the election of the presumptive president.

38. During the time between the national election day and the date for the Electoral college voting to occur, U.S. intelligence agencies confirmed that they possessed evidence showing foreign interference in the presidential election with the purpose of favoring Donald J. Trump and undermining Hillary R. Clinton in that election.

39. Plaintiffs and many other Presidential Electors considered this information of foreign influence in the election to be a matter of grave concern. Some Electors, including Plaintiffs, took affirmative steps to obtain more information from the then current President, Barack Obama, intelligence agencies, or Congress and specifically requested an intelligence briefing. Their requests were denied. It was later learned that U.S. Intelligence agencies knew Donald J. Trump's top campaign officials and one of his sons met with Russians in June 2016 at Trump Tower in New York City after being told the Russians had "dirt" on Secretary Clinton that could help the Trump Campaign.

40. The 2016 election, in the view of many, was thus unprecedented, and it focused attention upon the framers' purpose in establishing an electoral college with Electors with discretion who meet and vote separately from their own selection.

**B.     The determination of Electors to exercise their constitutional freedom**

41. These concerns led many to consider whether Electors should exercise their constitutional discretion to vote contrary to their pledge or the popular vote in their state.

42. A number of Electors, referred to as the "Hamilton Electors," began to discuss the possibility of pledging to support a compromise candidate, at first with the purpose of changing the result in the Electoral College, and ultimately with the purpose of giving the House of Representatives the chance to select that candidate rather than Donald Trump.

43. In early December, 2016, the Hamilton Electors announced that their preferred candidate was Ohio Governor John Kasich.

44. Acting on that recommendation, Plaintiffs determined finally that they wanted to vote for John Kasich rather than Hillary Clinton.

C. **Colorado's restriction of Plaintiffs' freedom**

45. Colorado law purports to control how Electors may exercise their vote. Section 1-4-304(5) of the Colorado Revised Statutes provides that "[e]ach presidential elector shall vote for the presidential candidate and, by separate ballot, vice-presidential candidate who received the highest number of votes at the preceding general election in this state." Section 1-13-723 of the Colorado Revised Statutes gives the state the power to punish criminally any "officer upon whom any duty is imposed by any election law who violates his duty."

46. On November 18, 2016, Plaintiff Nemanich emailed Colorado's Secretary of State, Wayne Williams, to ask "what would happen if" a Colorado state Elector "didn't vote for . . . Clinton and . . . Kaine." Williams, through surrogates, responded by email, stating that "if an elector failed to follow th[e] requirement" outlined in C.R.S. § 1-4-304(5), his "office would likely remove the elector and seat a replacement elector until all nine electoral votes were cast for the winning candidates."

47. Subsequent to that email, Secretary Williams also stated that if an Elector violates C.R.S. § 1-4-304(5), they would likely face either a misdemeanor or felony perjury charge.

48. On December 6, 2016, so as to secure their constitutional freedom to vote as their conscience determined, Plaintiffs Polly Baca and Nemanich filed suit in United States District Court for the District of Colorado, asking the Court to enjoin Secretary Williams from enforcing Colo. Rev. Stat. § 1-4-304(5).

49. On December 12, 2016, the district court denied Plaintiffs' injunction.

50. The following day, Plaintiffs filed an emergency motion for an injunction pending appeal in the 10th Circuit.

51. On December 16, 2016, the 10th Circuit denied Plaintiffs' emergency motion. The Court of Appeals was not persuaded that the Colorado Secretary of State would in fact restrict the freedom of Electors. Specifically, the Court did not credit Plaintiffs' concern that Secretary Williams would actually remove an Elector if an Elector voted contrary to the state statute. As the Court noted, C.R.S. § 1-4-304(1) gave the Secretary power to remove Electors "prior to the start of voting." The Court did not read the statute to give the Secretary any such power "after voting has begun." Indeed, as the Court expressly noted, such an act by the Secretary of State was "unlikely in light of the text of the Twelfth Amendment."

52. The predictions of the Court of Appeals proved mistaken.

53. On December 19, 2016, after a hearing in state court on a related matter, Secretary Williams, acting on behalf of Defendant Department of State, and under his emergency rule making authority, changed the oath of the Electors to put further pressure on them to vote consistent with Colorado's popular vote. At a meeting with the Electors in advance of their vote, the new oath was administered over objections from Plaintiffs. In the press before the vote, Secretary Williams, both personally and through surrogates, stated that anyone who violated their oath may be subject to felony perjury charges for intentionally violating the oath. The new

9

oath, created just moments before the Electors' vote, increased the pressure on Plaintiffs to vote for Hillary Clinton and Tim Kaine regardless of Plaintiffs' determined judgment.

54. Despite the new oath, Plaintiff Micheal Baca cast his ballot for John Kasich. Mr. Baca noted that the ballot was pre-printed with Hillary Clinton's name, he requested a new ballot, but his request was denied. Mr. Baca then crossed out Mrs. Clinton's name and wrote in Mr. Kasich's name with the undisputed intention that his ballot be counted for purposes of the final tally of Electoral College votes.

55. Despite the clear language of the 10th Circuit Court of Appeals indicating that Secretary Williams had no authority to remove an Elector once the Elector was seated — either because the statute did not so empower him or because the 12th Amendment would not permit it even if the statute did so empower him — Secretary Williams, acting on behalf of the Colorado Department of State, willfully removed Plaintiff Micheal Baca as an Elector, refused to count Mr. Baca's vote, and referred him to Colorado's Attorney General for criminal investigation and prosecution. Mr. Baca was replaced by a substitute Elector who cast her ballot for Mrs. Clinton. When the vote for Vice President was held, Mr. Baca cast a ballot for Mr. Kaine by writing Mr. Kaine's name on a pen box, which the Secretary, through a surrogate, retained but did not count.

56. Because of the actions of the Defendant Department of State, through Secretary Williams, changing the oath and removing Plaintiff Micheal Baca, Plaintiffs Polly Baca and Nemanich felt intimidated and pressured to vote against their determined judgment.

### COUNT 1
### (42 U.S.C. §1983)

57. Plaintiffs repeat and reallege all prior paragraphs.

58. 42 U.S.C. § 1983 provides a civil cause of action to any person who is deprived of rights guaranteed by the United States Constitution or federal law, by another person, acting under color of State law.

59. Article II and Amendment XII of the U.S. Constitution prohibit any person or any state from interfering with members of the Electoral College's votes for President and Vice President of the United States.

60. Article II and Amendment XII of the U.S. Constitution prohibit any person or any state from requiring members of the Electoral College to vote for specific candidates for President and Vice President of the United States.

61. The only limits on Electors' vote for President and Vice President of the United States are set forth in Article II and Amendment XII of the U.S. Constitution, and those limits cannot be expanded or contracted absent an amendment to the Constitution.

62. The U.S. Constitution permits Electors to vote for whomever they see fit for President and Vice President of the United States, subject only to the limitations set forth in the U.S. Constitution.

63. Defendant Department of State, acting through its Secretary Wayne Williams, deprived Plaintiffs Micheal Baca, Polly Baca, and Nemanich of a federally protected right when it threatened to remove them as Electors, and refer them for criminal prosecution, if they voted for a candidate other than Hillary Clinton.

64. Defendant Department of State, acting through its Secretary Wayne Williams, deprived Plaintiffs Micheal Baca of a federally protected right when it removed him as an Elector when he voted for a candidate other than Hillary Clinton.

65. At all times, Defendant, through its Secretary, was acting under color of state law.

66. At all times, Defendant, through its Secretary, was acting in its official capacity.

67. As a result of Defendant's conduct, Plaintiffs are entitled to damages.

68. As a consequence of the state statute, declaratory relief is necessary to stop Defendants' enforcement of the unconstitutional statute; without such relief the enforcement of this statute will continue unlawfully. Declaratory relief is necessary to stop enforcement of the unconstitutional statute and without such relief enforcement will continue unlawfully.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request this Court enter judgment:

1. Finding Defendant Department of State violated Plaintiffs' federally protected rights by depriving Micheal Baca of his federal right to act as an Elector and by threatening and intimidating Plaintiffs Micheal Baca, Polly Baca and Robert Nemanich;

2. Declaring C.R.S. § 1-4-304(5) unconstitutional; *and*

2. Awarding Plaintiffs nominal damages of $1 each for the violation of their rights.

Respectfully submitted this 25th day of October 2017.

*/s/ Lawrence Lessig*_____
Lawrence Lessig
1563 Massachusetts Ave.
Cambridge, MA 01238
617-496-8853
lessig@this.is

*/s/ Jason Wesoky*_____
Jason Wesoky
1331 17th St. Suite 800
Denver, CO 80202
303-623-9133
Jason.w@hamiltondefenders.org

*Counsel for Plaintiffs*