IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:17-cv-01937-WYD-NYW

MICHEAL BACA, POLLY BACA, and ROBERT NEMANICH,
    Plaintiffs,
v.

COLORADO DEPARTMENT OF STATE,
    Defendant.

---

**DEFENDANT'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

Defendant, the Colorado Department of State ("Department"), moves to dismiss the Second Amended Complaint (Doc. 39) under FED. R. CIV. P. 12(b)(1) and 12(b)(6).

## INTRODUCTION

This is the second federal lawsuit that Plaintiffs Polly Baca and Robert Nemanich have filed related to their ministerial roles as presidential electors in the 2016 Electoral College. Now joined by a third former elector, Micheal Baca, they again claim that their rights were violated in the days leading up to the 2016 Electoral College when the Colorado Secretary of State sought to enforce § 1-4-304(5), C.R.S. (2017), which binds presidential electors to the Presidential and Vice-Presidential candidates who won Colorado's popular vote. *See Baca v. Hickenlooper ("Baca I")*, No. 16-cv-02986-WYD-NYW, 2016 WL 7384286 (D. Colo. Dec. 21, 2016). In *Baca I*, this Court characterized the plaintiffs' suit as a "political stunt." *Baca I*, P.I. Hr'g Tr. 28:19, Dec. 12, 2016 (ECF No. 23). It thus rejected their eleventh hour request for a preliminary injunction barring enforcement of Colorado's binding statute in the 2016 Electoral College. *See Baca I*, 2016 WL 7384286.

Having failed to obtain a preliminary injunction, Ms. Baca and Mr. Nemanich followed Colorado law by casting their Electoral College ballots for the Presidential and Vice-Presidential

candidates who won Colorado's popular vote, Hillary Clinton and Timothy Kaine. Mr. Baca, however, attempted to cast his Presidential ballot for John Kasich—a person who appeared on no ballot, anywhere, as a presidential candidate in the November 8, 2016 general election. Consistent with state law, Mr. Baca's ballot was not counted, he was removed due to his failure or refusal to act, and he was replaced with a substitute elector. Plaintiffs contend these actions—which they acknowledge are fully consistent with Colorado state law—violated their federal constitutional rights.

Plaintiffs' Second Amended Complaint should be dismissed under both Rule 12(b)(1) and 12(b)(6). This Court lacks subject matter jurisdiction under Rule 12(b)(1) because Plaintiffs are former state officers who lack standing to challenge Colorado law. But even if that Article III hurdle is overcome, their argument fails as a matter of law under Rule 12(b)(6). Nothing in the U.S. Constitution bars a state from binding its presidential electors to the outcome of that state's popular vote for President and Vice President. To the contrary, the Constitution's text, United States Supreme Court precedent, and this country's longstanding historical practice all contemplate that the states may attach conditions to the office of a presidential elector. Because Colorado and 28 other states have done so lawfully, this case should be dismissed with prejudice.

## FACTS AND PROCEDURAL BACKGROUND

In *Baca I*, Ms. Baca and Mr. Nemanich sought a preliminary injunction barring enforcement of Colorado's binding statute just 13 days before the 2016 Electoral College vote. *Baca I*, ECF No. 1. This Court denied their motion, finding that they were unlikely to succeed on the merits of their claims and that Colorado's statute binding presidential electors to the Presidential and Vice-Presidential candidates who won the State's popular vote was "legally enforceable." *Baca I*, 2016 WL 7384286, *6. The Court reasoned that granting Plaintiffs a

preliminary injunction to permit them to vote their individual preferences in the Electoral College "would undermine the electoral process and unduly prejudice the American people by prohibiting a successful transition of power." *Id.* The Tenth Circuit declined to disturb this Court's decision. *Baca I*, ECF No. 26. In the run-up to the Electoral College vote, several other courts also declined to enjoin similar state laws governing electors, finding the challengers were unlikely to succeed on the merits. *See Chiafalo v. Inslee*, No. 16-36034, 2016 U.S. App. LEXIS 23392 (9th Cir. Dec. 16, 2016); *Chiafalo v. Inslee*, 224 F. Supp. 3d 1140 (W.D. Wash. Dec. 15, 2016); *Koller v. Brown*, 224 F. Supp. 3d 871 (N.D. Cal. Dec. 16, 2016); *see also Abdurrahman v. Dayton*, No. 16-cv-4279 (PAM/HB), 2016 WL 7428193 (D. Minn. Dec. 23, 2016).

Despite Plaintiffs' failure to obtain injunctive relief in federal court, the Department remained concerned that Plaintiffs or other presidential electors would nonetheless choose to violate Colorado's binding statute at the 2016 Electoral College meeting. The Department thus took action to develop a plan of succession in the event one or more of the electors refused to follow Colorado law. The Secretary of State initiated a separate lawsuit against Ms. Baca and Mr. Nemanich in the District Court for the City and County of Denver, which ruled that a presidential elector who failed to cast their Electoral College ballot for the Presidential and Vice-Presidential candidates who won the State's popular vote would, as a matter of Colorado law, be deemed to have "refus[ed] to act," thereby creating a vacancy in that elector's office.[1] § 1-4-304(1); *see Williams v. Baca*, Denver District Court No. 2016CV34522 (Dec. 13, 2016) (attached as *Exhibit A*); *Baca I*, ECF No. 28, p. 9. The state district court ruled that any such vacancy shall be immediately filled by a majority vote of the presidential electors present, and

---

[1] This Court may take judicial notice of the proceedings in the state court case and the *Baca I* suit because they have a "direct relation" to the matters at issue here. *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979).

that the Colorado Democratic Party shall provide the electors with nominations to fill any such vacancy. *Exhibit A*. The district court's order became "final and not subject to further appellate review" when the Colorado Supreme Court declined to consider the electors' appeal under § 1-1-113(3), C.R.S. (2017). *See Baca v. Williams*, Colo. Sup. Ct. No. 2016SA318 (Dec. 16, 2016) (attached as *Exhibit B*).

On the day of the Electoral College, December 19, 2016, Plaintiffs took an oath to cast their Electoral College ballots for the Presidential and Vice-Presidential candidates who received the highest number of votes in Colorado in the preceding election. Doc. 39, pp. 9–10. Ms. Baca and Mr. Nemanich cast their Electoral College ballots for the candidates who received the most votes in Colorado, Hillary Clinton and Timothy Kaine. *Baca I*, ECF No. 28, p. 10. But Mr. Baca attempted to cast his ballot for John Kasich. Doc. 39, p. 10. Consistent with the state district court's order, his office was deemed vacant and he was replaced with another elector via a majority vote of the remaining electors. *Baca I*, ECF No. 28, p. 10. Congress counted the Electoral College ballots on January 6, 2017, and announced Donald Trump and Michael Pence as the persons elected President and Vice President. 163 CONG. REC. H189–H190 (daily ed. Jan. 6, 2017). They took office on January 20, 2017.

The plaintiffs in *Baca I* voluntarily dismissed their case without prejudice in early August 2017. *Baca I*, ECF Nos. 57, 58. Nine days later, Ms. Baca and Mr. Nemanich—the same plaintiffs in *Baca I*—refiled substantially the same case against the Secretary of State. Doc. 1. Plaintiffs amended their complaint on September 20, 2017 to add Mr. Baca as a plaintiff. Doc. 13-1. After negotiations among the parties and with the Court's approval, Doc. 37, Plaintiffs submitted a Second Amended Complaint on October 25, 2017 that substantially narrows their claims and replaces the Secretary with the Department as the sole-named defendant. Doc. 39.

## STANDARD OF REVIEW

**Rule 12(b)(1)**. Lack of standing is a jurisdictional defense that is properly presented in a motion to dismiss under Rule 12(b)(1). *See, e.g., Citizens for Responsible Gov't State PAC v. Davidson*, 236 F.3d 1174, 1188–89 (10th Cir. 2000). A motion to dismiss under Rule 12(b)(1) admits all well-pleaded facts in the complaint as distinguished from conclusory allegations. *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001). The moving party may either facially attack the complaint's allegations as to the existence of subject matter jurisdiction or go beyond the allegations by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests. *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

**Rule 12(b)(6)**. A claim must be dismissed under Rule 12(b)(6) if it asserts a legal theory not cognizable as a matter of law or if the complaint fails to allege sufficient facts to support a cognizable legal claim. *Bd. of Cnty. Comm'rs of La Plata v. Brown Retail Group, Inc.*, 598 F. Supp. 2d 1185, 1191 (D. Colo. 2009). Under the former, a complaint fails if it appears beyond doubt that the plaintiff can plead no set of facts in support of his claim which would entitle him to relief. *Id.* Under the latter, a complaint must be dismissed if the plaintiff does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## ARGUMENT

Plaintiffs' Second Amended Complaint challenging Colorado law should be dismissed at the outset because a fatal defect deprives this Court of subject matter jurisdiction—Plaintiffs are

former state officers who lack standing to challenge Colorado law. But even putting aside this jurisdictional defect, dismissal is alternatively required because Plaintiffs' Second Amended Complaint fails to state a claim upon which relief can be granted under Rule 12(b)(6). The U.S. Constitution, backed by longstanding interpretations from the United States Supreme Court and historical practice, permits states to bind presidential electors to the Presidential and Vice-Presidential candidates who won the State's popular vote. Nothing in Article II or the Twelfth Amendment abrogates this state power.

### I. Presidential electors lack standing to challenge the constitutionality of Colorado law.

Plaintiffs' prayer for relief asks that this Court declare § 1-4-304(5) unconstitutional. Doc. 39, p. 12. But Plaintiffs lack standing to challenge § 1-4-304(5)—that necessary "personal injury fairly traceable to the defendant's allegedly unlawful conduct [that is] likely to be redressed by the requested relief." *DaimerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). Specifically, the political subdivision standing doctrine bars Plaintiffs' lawsuit against the Department. *See City of Hugo v. Nichols*, 656 F.3d 1251, 1255 (10th Cir. 2011).

"Under the doctrine of political subdivision standing, federal courts lack jurisdiction over certain controversies between political subdivisions and their parent states." *Id.* "This doctrine is an important limitation on the power of the federal government. It guarantees that a federal court will not resolve certain disputes between a state and local government." *Cooke v. Hickenlooper*, No. 13-cv-01300-MSK-MJW, 2013 WL 6384218, *10 (D. Colo. Nov. 27, 2013). A "political subdivision cannot invoke (nor can a federal court impose) the protections of the United States Constitution for individuals against a state." *Id.* (citing *Williams v. Mayor & City Council of Balt.*, 289 U.S. 36, 40 (1933)); *see also Kerr v. Hickenlooper*, No. 11-cv-01350-RM-NYW, 2017 WL 1737703, *7–11 (D. Colo. May 4, 2017) (finding political subdivisions—boards of county

commissioners, education, and special districts—lacked standing to sue State for violating the federal "Guarantee Clause," U.S. CONST. art. IV, § 4).

The doctrine applies not only to artificial political subdivisions, such as municipalities, but also to state officers who attempt to sue the State to challenge a state law. *City of Hugo*, 656 F.3d at 1255 n.3; *accord Columbus & Greenville Railway v. Miller*, 283 U.S. 96, 99–100 (1931) (tax collector); *Donelon v. La. Div. of Admin. Law ex rel. Wise*, 522 F.3d 564, 566–67 (5th Cir. 2008) (state insurance commissioner); *Cooke*, 2013 WL 6384218, *10–13 (county sheriffs). State officers lack Article III standing to challenge the constitutionality of state statutes when they are not personally affected by those statutes and their interest in the litigation is official rather than personal. *Donelon*, 522 F.3d at 566–67 (citing *Cnty. Court of Braxton Cnty. v. West Virginia ex rel. Dillon*, 208 U.S. 192, 197 (1908)).

Presidential electors are without doubt state officers. *See Walker v. United States*, 93 F.2d 383 (8th Cir. 1937) (dismissing federal indictment because "presidential electors are officers of the state and not federal officers"); *Chenault v. Carter*, 332 S.W.2d 623 (Ky. 1960) (holding that presidential electors are state officers under Kentucky law); *see also Fitzgerald v. Green*, 134 U.S. 377, 379 (1890) (holding that presidential electors "are no more officers or agents of the United States than are the members of the state legislatures when acting as electors of federal senators, or the people of the states when acting as electors of representatives in congress"). Nor is there any question that Plaintiffs' stake in this case is official rather than personal. In *Smith v. Indiana*, 191 U.S. 138 (1903), a county auditor argued that an Indiana property tax statute violated the Fourteenth Amendment. The U.S. Supreme Court held that "the auditor had no personal interest in the litigation. He had certain duties as a public officer to perform. The performance of those duties was of no personal benefit to him. Their non-performance was

equally so." 191 U.S. at 149. Simply "testing the constitutionality of the law purely in the interests of third persons," like the taxpaying public, is not a sufficient "personal" stake to confer Article III standing. *Id.*

So too here. While a narrow group of former presidential electors may believe that it was their constitutional responsibility to exercise discretion when casting their Electoral College ballots—thus violating state law—a "public official's personal dilemma in performing official duties that he perceives to be unconstitutional does not generate standing." *Thomas v. Mundell*, 572 F.3d 756, 761 (9th Cir. 2009); *see also Mesa Verde Co. v. Montezuma County Bd. of Equalization*, 831 P.2d 482, 484 (Colo. 1992) (holding that "political subdivisions of the state or officers thereof . . . lack standing to assert constitutional challenges to statutes defining their responsibilities"). As former state officers whose official duties are prescribed by Colorado law, Plaintiffs lack Article III standing to challenge the constitutionality of the state statute that prescribes those official duties.

Accordingly, Plaintiffs' challenge to § 1-4-304(5) should be dismissed for lack of standing.

**II.   Plaintiffs' complaint suggesting Colorado may not bind its presidential electors fails to state a claim upon which relief can be granted.**

Even if Plaintiffs overcome the Article III deficiencies in their Complaint, dismissal is still required under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiffs contend that § 1-4-304(5) violates Article II of the U.S. Constitution and the Twelfth Amendment. Doc. 39, p. 11. Because these theories are not cognizable as a matter of law, Rule 12(b)(6) requires dismissal.

### A.   The text of the U.S. Constitution permits binding of presidential electors.

The U.S. Constitution reserves to the States the right to decide for themselves how their presidential electors are selected and, if necessary, removed. Article II provides that "[e]ach state shall appoint, *in such manner as the Legislature thereof may direct*, a number of electors, equal to the whole number of Senators and Representatives to which the State may be entitled in the Congress." U.S. CONST. art II, § 1 (emphasis added). Nothing in the Twelfth Amendment, or any other amendment, abrogates this state power. *See Bush v. Gore*, 531 U.S. 98, 104 (2000) (confirming the States' power under Article II, § 1 is "plenary"). Thus, because the States alone have the power to appoint their presidential electors, they necessarily possess the power to attach conditions to that appointment and provide for removal. Binding them to the outcome of the State's popular vote is one such permissible condition.[2] *See* Beverly J. Ross & William Josephson, *The Electoral College and the Popular Vote*, 12 J. L. & POLITICS 665, 678 (1996) ("The states' constitutional power to appoint electors would appear to include the power to bind them"). And it is the most popular condition, with 29 states and the District of Columbia opting to do so.[3] In the same vein, no constitutional provision bars a state from removing electors who refuse to comply with state law. *See, e.g.*, MICH. COMP. LAWS ANN. § 168.47 (2017) (stating that refusal or failure to vote for the Presidential and Vice-Presidential candidates appearing on the ballot of the political party that nominated the elector constitutes "a resignation from the office of the elector").

---

[2] Even Congress agrees that electors may be bound. It enacted legislation pursuant to the Twenty-third Amendment that binds the District of Columbia's presidential electors to the candidates who won the District's popular vote. *See* D.C. CODE ANN. § 1-1001.08(g)(2) (2017) (originally enacted in 1961, Pub L. No. 87-389, 75 Stat. 818).

[3] National Conference of State Legislatures, *The Electoral College* (Aug. 22, 2016) ("NCSL"), *available at*: http://www.ncsl.org/research/elections-and-campaigns/the-electoral-college.aspx (last visited Nov. 5, 2017).

At best, Plaintiffs' position boils down to an argument that electors cannot be bound because the U.S. Constitution is silent on the question. But if the Constitution is silent, the power to bind or remove electors is properly reserved to the States under the Tenth Amendment. U.S. CONST. AMEND. X; *see McPherson v. Blacker*, 146 U.S. 1, 35–36 (1892) (stating "exclusive" State power over "mode of appointment" of electors "cannot be overthrown because the States have latterly exercised in a particular way a power which they might have exercised in some other way"); *cf.* Matthew J. Festa, *The Origins and Constitutionality of State Unit Voting in the Electoral College*, 54 VAND. L. REV. 2099, 2145 (2001) ("[A]ny legislation that impinges on the states' discretion to use the [winner-take-all allocation of electoral votes] would seem to run into this very same Tenth Amendment problem"). Colorado has chosen to exercise that power and bind its presidential electors to the candidates who won the State's popular vote. § 1-4-304(5). Plaintiffs cite no case, and the Department is aware of none, striking down that choice as unconstitutional.

### B. The U.S. Supreme Court and multiple lower courts permit binding of electors.

The U.S. Supreme Court has upheld measures that bind presidential electors in circumstances that, while not identical, are similar to this case. *See Ray v. Blair*, 343 U.S. 214 (1952). In *Ray*, the Alabama legislature delegated to the political parties the authority to nominate electors. *Id.* at 217 n.2. Alabama's Democratic Party required its nominees for electors to pledge "aid and support" to the nominees of the National Convention of the Democratic Party for President and Vice President. *Id.* at 215. The Court upheld this pledge requirement, finding "no federal constitutional objection" when a state authorizes a party to choose its nominees for elector and to "fix the qualifications for the candidates." *Id.* at 231. Thus, the Court refused to recognize a constitutional right for presidential electors to vote their individual preferences.

Plaintiffs in *Baca I* asserted that *Ray* left open the question of enforcement of statutes that bind presidential electors. But that argument splits the hair too finely. Under *Ray*, if a state has the power to delegate its power to bind electors, it necessarily must have the authority to bind them itself and to enforce that binding. *See* Ross & Josephson, 12 J. L. & POLITICS at 696 ("[T]he Court's language and reasoning in *Ray v. Blair* strongly imply that state laws directly binding electors to a specific candidate are constitutional"). As such, Plaintiffs have not overcome the strong presumption favoring the constitutionality of Colorado's binding statute. *See Gilmor v. Thomas*, 490 F.3d 791, 798 (10th Cir. 2007). This Court in *Baca I* concluded as much when it denied Plaintiffs' request for a preliminary injunction.[4] 2016 WL 7384286, *3.

To the extent that Plaintiffs challenge the Department's past enforcement of § 1-4-304(5), their arguments likewise fail as a matter of law. Multiple lower courts have found state elector statutes like Colorado's to be enforceable. *See Gelineau v. Johnson*, 904 F. Supp. 2d 742, 748 (W.D. Mich. 2012) ("Though the [*Ray*] Court was not in a position to decide whether the pledge was ultimately enforceable, the opinion's reasoning strongly suggested that it would be"); *Thomas v. Cohen*, 262 N.Y.S. 320, 326 (Sup. Ct. 1933) ("The elector who attempted to disregard that duty could, in my opinion, be required by mandamus to carry out the mandate of the voters of his State"); *State ex rel. Neb. Republican State Cent. Comm. v. Wait*, 138 N.W. 159, 163 (Neb. 1912) (affirming writ of mandamus requiring the Secretary of State to print on the Republican

---

[4] Plaintiffs here do not assert a First Amendment claim as they did *Baca I*, instead opting to narrowly confine their claim to Article II of the U.S. Constitution and the Twelfth Amendment. Doc. 39. Nor would a First Amendment claim be successful. Only "inherently expressive" conduct is extended First Amendment protection. *Rumsfeld v. Forum for Academic & Instit. Rights, Inc.*, 547 U.S. 47, 66 (2006). Casting an Electoral College ballot is "purely ministerial," *Thomas*, 262 N.Y.S. at 326, not inherently expressive. Moreover, as this Court previously found, conduct made illegal by a state is not unconstitutional simply because the activity purportedly involves elements of free speech. *Baca I*, 2016 WL 7384286, *4.

line of the ballot the names of six replacement electors when the original Republican electors "openly declare[d]" they would vote in the Electoral College for another party's candidates).

Each of these cases underscores the "bounden duty" imposed on electors to vote in the Electoral College for the candidates who won the State's popular vote. *Thomas*, 262 N.Y.S. at 326. So "sacred and compelling" is that duty—and so "unexpected and destructive of order in our land" would be its violation—that courts have recognized its performance amounts to a "purely ministerial" duty that may be compelled through a writ of mandamus. *Id*. Electors do not "exercise judgment or discretion in the slightest degree"; they "are in effect no more than messengers whose sole duty it is to certify and transmit the election returns." *Spreckels v. Graham*, 228 P. 1040, 1045 (Cal. 1924).

Accordingly, because the courts have uniformly recognized the constitutionality and enforceability of binding electors through statute, Plaintiffs' challenge to § 1-4-304(5) fails to state a claim upon which relief can be granted.

### C. History and longstanding practice confirm that Colorado's binding statute is consistent with the Constitution.

The history of the Electoral College and longstanding practice confirm that presidential electors hold no constitutional right to vote their conscience. *See NLRB v. Noel Canning*, 134 S. Ct. 2550, 2559 (2014) (stating "long settled and established practice" deserve "great weight" in constitutional interpretation); *Walz v. Tax Comm'n*, 397 U.S. 664, 678 (1970) (stating "no one acquires a vested or protected right in violation of the Constitution by long use … [y]et an unbroken practice … is not something to be lightly cast aside."); *Ray*, 343 U.S. at 228 (citing to "longstanding practice" to uphold pledge requirement).

As early as the first election held under the Constitution, the voting public "took pledges" from the elector candidates, who promised to "obey their will." *Ray*, 343 U.S. at 228 n.15

(quoting S. Rep. No. 22, 19th Cong., 1st Sess., p. 4 (1826)). "In every subsequent election, the same thing has been done." *Id.* The electors "are not left to the exercise of their own judgment: on the contrary, they give their vote, or bind themselves to give it, according to the will of their constituents." *Id.* The reason is that "the people do not elect a person for an elector who, they know, does not intend to vote for a particular person as President." *Id.* (quoting 11 Annals of Congress 1289–90, 7th Cong., 1st Sess. (1802)). As Justice Story put it, "an exercise of an independent judgment would be treated, as a political usurpation, dishonourable to the individual, and a fraud upon his constituents." 3 Joseph Story, *Commentaries on the Constitution of the United States* § 1457 (1833).

The history of the Twelfth Amendment is consistent with this understanding. Under the original Constitution, "the electors ... did not vote separately for President and Vice-President; each elector voted for two persons, without designating which office he wanted each person to fill." *Ray*, 343 U.S. at 224 n.11. But that system quickly proved unworkable; in 1800, for example, the election ended in a tie because Democratic-Republican electors had no way to distinguish between Presidential nominee Thomas Jefferson and Vice-Presidential nominee Aaron Burr when they each cast two votes for President. *See* Robert M. Hardaway, *The Electoral College and the Constitution*, 91–92 (1994). Because that situation was "manifestly intolerable," *Ray*, 343 U.S. at 224 n.11, the Twelfth Amendment was adopted, allowing the electors to cast "distinct ballots" for President and Vice-President. U.S. CONST. AMEND. XII. The Twelfth Amendment thus permitted electors to be chosen "to vote for party candidates for both offices," allowing them "to carry out the desires of the people, without confronting the obstacles which confounded the election[ ] … 1800." *Ray*, 343 U.S. at 224 n.11. In short, the Twelfth Amendment was the solution to the unique problems posed when electors are pledged and bound

to the candidates of their declared party. Without that historical practice, dating back to at least 1800, the Twelfth Amendment would not have been necessary.

Today, 29 states and the U.S. Congress have enacted legislation that codifies this historical understanding and longstanding practice. *See* NCSL, *supra* note 3; D.C. CODE ANN. § 1-1001.08(g)(2). Plaintiffs ask this Court to strike down those legislative choices, and ignore more than 200 years of history, to sanction a new system that would render the People's vote merely advisory. This Court should reject Plaintiffs' invitation.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Second Amended Complaint should be dismissed in its entirety with prejudice.

Respectfully submitted this 8th day of November, 2017.

        CYNTHIA H. COFFMAN
        Attorney General

        *s/ Grant T. Sullivan*
        LEEANN MORRILL, 38742*
        First Assistant Attorney General
        MATTHEW D. GROVE, 34269*
        Assistant Solicitor General
        GRANT T. SULLIVAN, 40151*
        Assistant Solicitor General

        Public Officials Unit / State Services Section
        Attorneys for Defendants
        Ralph L. Carr Colorado Judicial Center
        1300 Broadway, 6th Floor
        Denver, Colorado  80203
        Telephone:  720 508-6349
        FAX:  720 508-6041
        E-Mail: leeann.morrill@coag.gov
               matt.grove@coag.gov
               grant.sullivan@coag.gov
        *Counsel of Record

## CERTIFICATE OF SERVICE

  I hereby certify that on November 8, 2017, I served a true and complete copy of the foregoing **DEFENDANTS' MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)** upon all parties through ECF:

Jason Wesoky
1331 17th Street, Ste. 800
Denver, CO 80202

Lawrence Lessig
1563 Massachusetts Ave.
Cambridge, MA 01238

*Attorney for Plaintiffs*

                   *s/ Terri Connell*